We are ready for argument in our first case, Lester v. Flournoy. Mr. Garcia? Good morning, and may it please the Court. This Court has identified four requirements for Savings Clause relief, and the government agrees that Mr. Lester satisfies the first three. The only dispute concerns the fourth requirement, whether his sentence is fundamentally defective. But given this Court's recent holding in Wheeler that a proper sentencing range is fundamental, the government's only remaining argument is that the pre-Booker mandatory guidelines did not set the proper sentencing range for Mr. Lester's crime. And that argument is foreclosed by two separate decisions, Wheeler itself and the Supreme Court's decision in Booker. Wheeler was not a mandatory sentencing guidelines case, is that right? That's correct. How does that foreclose this argument? So the Wheeler decision explicitly endorses the Sixth and Seventh Circuit decisions that grant relief to petitioners in Lester's exact position. But even if there is an open question after Wheeler, the second and even more fundamental reason is the Court's decision in Booker, which the government completely ignores. Booker held that courts lacked authority to exceed the mandatory guideline range because Congress made the guidelines binding by statute. So when the government argues that guidelines are merely guidelines and not a statutory sentencing mandate, they're simply ignoring Booker's holding that Congress, in a congressionally enacted statute, made the guidelines the mandatory sentencing range for a given crime in a way that's no different in substance from a statutory range today. But the Supreme Court told us pretty clearly in Beckles that that's not true, that they're not the same, they're not identical. There is a difference between the statutory and guidelines prescriptions. And, in fact, the basis of Justice Sotomayor's concurrence in Beckles was the fact that that case specifically did not reach the mandatory guidelines. Well, the last point you said, Your Honor, is respectfully incorrect. Beckles was all about the advisory guidelines today. And we agree that the guidelines today are fundamentally different. I don't think you heard my question. You're right. They were about the advisory guidelines. What I was saying is the court did not reach the mandatory guidelines, and that was the basis. The fact that that question had not been decided in Beckles was the basis for Justice Sotomayor's dissent, was it not?  In Justice Sotomayor's dissent, there was a footnote saying that that decision does not address whether the Johnson case applies to the mandatory guidelines. But that is not the issue in this case, Your Honor. Justice Sotomayor was trying to flag that that constitutional question was still open. Still out there. Yes. You understand that my only point, obviously the landscape has changed dramatically with Wheeler. My only point was that I'm not sure how far Booker alone gets you. So, and I will go back to the distinction, Your Honor, that Beckles, in the majority opinion itself, in Beckles, explains that the guidelines were binding before Booker. And talks about the fact that due process concerns are no longer applicable after Booker. And that is the pre-Booker sentence, the period that we are talking about. And the issue in our case is whether Mr. Lester's sentence is fundamentally defective. And under the government's own test, the question is whether the sentence exceeds the court's statutory authority. And that was directly the issue in Booker. So Beckles is addressing a different world of arguments. In Booker, the exact issue was did the jury's verdict give the court authority to sentence Mr. Booker to 30 years in prison? And the maximum statutory sentence was life, but the mandatory guidelines were lower. And the court said no. The court had no authority. And that is because in 3553b1, Congress had made the mandatory guidelines binding. It said courts shall impose a sentence within the guidelines range. And, in fact, Booker rejects every single thing the government says in its supplemental brief about the guidelines. So, first, the government points to the fact that the guidelines were promulgated by the sentencing commission and not by Congress. That's true. But the savings clause would not be available to the petitioner here under Jones, would it? Not under Jones because Jones was just about unlawful convictions. But under Wheeler, of course, the court has established that savings clause relief is available for fundamentally defective sentences. And our argument, I believe the dispute here after Wheeler is very narrow. Wheeler holds that sentences, being sentenced under an improper sentencing range, is a fundamental defect. And the only remaining question is whether the guidelines before Booker established the proper sentencing range. That is the square holding of Booker. If there was any respect in which a court before Booker could sentence a defendant to a term above the mandatory guideline range, Booker would have come out the other way. It was the question in Booker. So I was mentioning that they point to the fact and may argue today that the guidelines were promulgated by the Sentencing Commission and not Congress. And that's true, of course. But on page 238 of Booker, the court addressed that and said it lacks constitutional significance because the guidelines were made binding by a congressionally enacted statute. As the court put it in the RLC case, the distinction doesn't matter because the mandate to apply the guidelines is itself statutory. And the second point the government makes is that you could have a departure under the pre-Booker guidelines. Again, Booker explicitly addresses that. This time on page 234, it rejects the proposition that the availability of a departure meant a judge was bound only by the statutory maximum. You're saying that even absent Wheeler, this case should come out the same way because of Booker? Is that your argument? My argument is yes, actually, even putting aside Wheeler. Because the test for a fundamental defect is whether the sentence exceeds the maximum lawful term under federal law, because that is the test, there would have been a fundamental defect even before Wheeler because Booker holds. Booker resolves that question, the interaction between the mandatory guidelines and a district court sentencing authority. But ultimately, the result in Booker was that the guidelines were made advisory, right? So isn't that the government's argument that because of that, this sentence would have been well within that ultimate range, the range set by Congress in the statute? So the question here is whether Mr. Lester's detention is illegal. And he's being detained under a 2004 judgment that was issued when the mandatory guidelines were binding. We have no dispute that today, and the court has already addressed that in the Foote decision, that errors under the advisory guidelines don't raise a fundamental defect, and there's no tension in that distinction, as the Foote decision itself says, that they reached that conclusion because Booker stripped the guidelines of legal force. In the Wheeler decision in Foote Note 9, the court says the same thing. The central feature of Foote is that the guidelines today are advisory. And the obvious implication, Your Honor, is that before Booker, when Mr. Lester was sentenced, the guidelines were, as we always say, mandatory because Congress had made them mandatory. And this is the same distinction between mandatory guideline errors and advisory guideline errors that the Seventh Circuit has drawn in the decision Wheeler endorses, and it goes back to the underlying principle that I mentioned earlier, which is, is the sentence in excess of the maximum term authorized by federal law? The advisory guidelines today do not set maximum lawful terms. The mandatory guidelines did, and that's the holding of Booker. And that is why, Your Honor, Mr. Lester is entitled to relief. The only other point I would like to raise is about relief. So if Mr. Lester had received his maximum lawful sentence of 151 months, he would have been released with good time credit in early 2014. His ongoing detention today is illegal and without statutory authority. There is no defect more fundamental than being detained by the federal government for conduct the law does not make criminal, as in Jones, or for a term the law does not authorize, which is this case. And this Court has authority under Section 2243 to order Mr. Lester's immediate release, and we would respectfully request that, given the fact that he would have been released in 2014, that this Court do so and exercise that authority. So what you're saying then, Mr. Garcia, is if we agree with your position, you ask that we enter an order in advance of issuing an opinion? Is that what you're asking, or not? We may request that. I think that every day that Mr. Lester is detained pursuant to this unlawful judgment is inherently a miscarriage of justice. And if the Court determines that the Savings Clause requirements apply, then I do think it's within the Court's authority to order his immediate release, perhaps conditional on a resentencing. At that resentencing, the guideline range today would be 51 to 63 months. Mr. Lester has been a model inmate. Nothing in his pre-sentencing report identified any basis for an upward departure. There's simply no way he would receive anything close to a sentence today. And, Judge Diaz, that actually brings me back to a question you asked earlier, which is couldn't Mr. Lester receive this same sentence today? And the answer is no for the reasons I just gave, but also that simply has to be irrelevant after Wheeler because the same thing was true there. Mr. Wheeler received a 10-year mandatory minimum. The Court openly acknowledged that he could receive that exact same sentence on remand, but the Court explained that's irrelevant because it is a fundamental defect to be sentenced under an improper sentencing range that is reaching much further than the proposition we are relying on today. It's irrelevant to the point of whether the Savings Clause applies. Is that what you're saying? To the question of a fundamental defect, the fourth requirement of the Savings Clause relief, yes. He should still be able to challenge this judgment, which is unlawful. And just to step back, Your Honors, I do think after Wheeler, the dispute here is quite narrow. Wheeler holds that a proper sentencing range is fundamental, and Booker already held that the mandatory guideline range established the proper sentencing range for Mr. Lester. You have some time reserved for rebuttal. Okay. Good morning, Your Honors, and may it please the Court. Michael Rocker from the Department of Justice on behalf of the Respondent Warden. In United States v. Foote, Your Honors, this Court identified four considerations that led it to conclude that a misapplication of the post-Booker career offender guideline was not fundamental. All four of those considerations are equally applicable to the misapplication of the pre-Booker guideline that's at issue in this case. Accordingly, under the logic and the reasoning of this Court's decision in Foote, the error in question here is not fundamental. Now, what I'd like to do with the Court's permission is to walk through the four reasons that the Court gave in Foote, and I think in doing so I'll be able to address the points made by my distinguished adversary as well as by the Court this morning during its questioning. Now, to begin with, in Foote, the Court stated that where a defendant seeks collateral relief based on a non-constitutional error, and it's not disputed here, he has to show that it's fundamental. Now, the term fundamental is not self-defining, but it's designed to make clear that it's something more than a mere error, even a mere reversible error. It is something that is sufficiently grave and profound to justify inroads on a final judgment. And with that as backdrop, what the Court said in Foote is that typically, almost exclusively, the types of claims that involve fundamental error involve some species of innocence. Now, in Mr. Foote's case, just as in Mr. Lester's case, there is no claim that the defendant is innocent of the Federal drug offense for which he was sentenced. There is no claim that he is innocent of the predicate conviction that was used to enhance his sentence. And there is no such concept, if you will, as being innocent of a career offender. But Wheeler, though, cleared up the issue that sentencing errors were redressable. Did it not? Well, I think it — And in arguing the Foote paradigm, it seems to me that you're not taking account of the fact that Wheeler answered the question for the first time that these sentencing errors can be redressed in the context of the savings clause. Sure. So it seems to me that you're not giving us the whole picture. Well, I was going to get to that point, but I'm happy to address it right now. First of all, I think that this Court is caught in between two precedents. One is Wheeler, and the other is Foote. And I think ultimately what the Court's decision will reduce to is, do you believe that the error in this case is more akin to the error in Foote, which was post-Booker career offender guideline, or is this more akin to the Wheeler error, which is a statutory mandatory minimum? And I think that's really the rub of the issue here that the Court has to decide. Judge Keenan, as far as your question, I don't think that Wheeler spoke broadly that all sentencing errors are redressable under the savings clause. No, it didn't say all, but it did answer the question that sentencing errors can be, depending on the circumstances, redressed. Well, again, certain, certain sentencing errors. Now, and I think Wheeler went to great lengths to make clear that it was restricting its holding to the particular error that was at issue in that case, which was a statutory mandatory minimum. But that's, but I'm not, I'm not exactly sure how that helps you, because what it did, as Judge Keenan articulated, was to recognize the possibility. Yes. And once you recognize the possibility, the question just becomes whether the facts before us that were not the facts before the Court in Wheeler. Exactly. Contemplate or implicate the same concern. I agree. I think we're saying the same thing. Perhaps I'm not being clear. We're not disputing that some sentencing errors are redressable after Wheeler. The only question is, as I said, is this type of error fit within the Wheeler framework, or is it more akin to a Foote-type claim? And the reason that I don't think Wheeler is applicable here is that, in fact, one of the considerations that Foote gave for its holding about the advisory career offender guideline is it said there's a qualitative difference between a guideline error and a statutory error for purposes of determining whether or not it's fundamental. And the qualitative difference is this. When you're dealing with a statutory error, remember, Congress defines crimes and Congress sets the punishment. When a Federal district court imposes a statutory sentence that Congress didn't authorize, you have a separation of powers concern. You have the judiciary failing to give effect to the will of Congress. That is part of the rationale why a Wheeler-type error, a statutory error, can be deemed was deemed fundamental. But the court in Wheeler, though, went to fairly great pains to distinguish Foote, didn't it? Correct. In Foote Note 9? Correct. And saying particularly that the fact that the guidelines were advisory, it did not carry the weight and effect of a statute. So the court clearly was trying to distance itself from Foote, it seems to me, in terms of maybe cabining Foote to the situation of where you have an advisory guideline situation. I don't disagree that that's the holding. And as I said before, I don't think the holding of either Wheeler or Foote controls this case. And the question is that the court's going to have to decide, is this more like Wheeler or is it more like Foote? I don't disagree with anything that Your Honor, Judge Keenan just said. The point that I'm trying to make is that the reason that the government believes that this error is more akin to a Foote-type situation is that a statutory error raises a separation of powers concern. Conversely, when a court misapplies the guidelines, even when the guidelines were mandatory, remember, they were not promulgated by Congress. They were promulgated by the Sentencing Commission, which is an independent agency in the judicial branch. When a court miscalculates the guidelines range, it's committing a judicial error. But in doing so, it's not trenching on Congress's brogadism. Well, but I mean, the court was operating under the regime that existed at the time. So how can we say that it miscalculated the sentence? You're right. With the benefit of hindsight now, we can say that the court committed an error in calculating the range. But my larger point is that that error doesn't infringe on Congress's prerogatives. Calculating the guidelines range is a purely judicial function. So you don't have the separation of powers concern in the guidelines setting. Why don't you have a due process concern? I mean, this is a all – I mean, if Wheeler had a due process concern because of a failure to sentence within a mandatory minimum, how is it any less a due process issue to sentence outside of a then properly calculated mandatory sentencing range? I don't think it's a due process error to miscalculate the guidelines range, even when the guidelines were mandatory. Because, I mean, part of the whole regime about the guidelines when they were first enacted is, yes, we want to have uniformity and eliminate disparity. But the Sentencing Commission specifically built in the authority to depart from the guidelines range. So the guidelines — But it was a very narrow and restrictive — Yes, it was. But it still exists. — design. And, in fact, you know, in Brown v. Carraway, the Seventh Circuit just came out and said the mandatory guidelines had the force and effect of law. They did. The bookers said that. The only lawful sentence was a guideline sentence. I agree with the first half of that statement, not the second half. Well, unless — They did have — Unless you could shoehorn yourself into the narrow, narrow category. Let me try to illustrate why I think there's an important difference here. Let's just take the facts of Mr. Lester's case as an illustration. He had a 40-year statutory maximum. There are no facts about Mr. Lester personally or the offense that he committed that would ever justify a court imposing a 41-year sentence, 40 years in a month, 40 years in a week, 40 years in a day, 40 years in an hour. Okay? The 40-year cap was an absolutely inviolable statutory maximum. Okay? The top of his guidelines range, it was mandatory, was 327 months. That was not an inviolable ceiling. The circumstances under which a court may have imposed a sentence above 327 months were restricted, but they were not forbidden. Could he be resentenced to that? Yes. If he were resentenced today, Your Honor, it would be under the advisory guidelines, and the court would have the authority to vary. Now, whether or not the court would impose the same sentence is not something that we can decide right now. We don't have a resentencing. We don't have a transcript. We don't know what the court would think. My opponent may speculate, rightly so, that the court wouldn't. I would submit that's not even relevant. What I think is relevant is that the court could impose the same sentence, because it would be – I'm sorry. No, no, please. No. Under your analysis, then, Mr. Walker, could there be a fundamental defect that did not implicate separation of powers? Are you saying that those two things are the same, essentially, that you cannot have a fundamental defect outside the context of separation of powers? It's a great question. I don't – I can't think of a situation where there would be a fundamental error without a separation of powers problem. Look at In re Jones, where this Court found it fundamental. There was a separation of powers problem there because the crime was not legislatively defined. Other courts have recognized that a sentence above a congressionally defined statutory maximum is a separation of powers problem because it's a common law punishment. You're going beyond – the sentencing court is going beyond the authority that Congress has bestowed. Okay? In the guidelines context, there is a split of authority. We acknowledge that, and we have all along. My opponent is relying on the Sixth and Seventh Circuits. They have said this is fundamental without engaging in a separation of powers analysis. The Eleventh Circuit, en banc in the Gilbert case, said there is no remedy for misapplications of the mandatory career offender guideline. Now, Gilbert has since been overruled by the Eleventh Circuit, but on grounds that it didn't go far enough in its holding. So Gilbert is no longer a viable precedent, but the reasoning of that case, it hasn't been overruled because it was wrong as to that point. And I would also emphasize the – Now, Wheeler could have gotten the same sentence on remand, couldn't he? That's correct. But again – But that's still – and your argument – your comeback argument is separation of powers. Yeah, because I think – I think statutory errors – If you look at Foote, Your Honors, I would encourage the Court – I recognize that Wheeler distinguished it. Your Honor is absolutely correct. But I still think if you look at the reasoning, part of the reasoning why Foote said that the advisory career offender guideline is not fundamental is because it's qualitatively different than a statutory error. Then if you go back and look at Wheeler, Wheeler is pegging it to the fact that statutory errors implicate that separation of powers concern. And I think the only way to reconcile those cases is to say the mere fact – what Most cases that have involved fundamental error involve something akin where the Court exceeded its lawful authority and there's a separation of powers violation. Wheeler, I think, applied that prophylaxis to the context of a mandatory minimum. It is certainly true that the Court could have reimposed the sentence. But again, Foote says that the fact that a sentence is within statutory limits is at least a relevant consideration to whether or not this error ranks as fundamental. Well, wasn't Wheeler's sentence within the statutory limits?   I'm sorry. Within the – Statutory limit? It was. So how is that any different? Because, again, the violation that – it's a multifaceted approach. It's not – I guess you're – my issue is it seems to me that your problem is with Wheeler, and we're bound by that. No, I can accept Wheeler for – I mean, we certainly do – I don't think you have. You filed a cert petition in Wheeler. But for present purposes, I – we accept, obviously, that Wheeler is the law that binds this panel. That's what I meant. The Solicitor General has filed for review. But for purposes of this argument and for purposes of this Court, we accept that Wheeler is binding. We just simply say it's not controlling. We think that Foote is the more apposite precedent rather than Wheeler. And you're not suggesting that we put this off again until the Supreme Court decides whether it's going to grant cert? Let me answer the question this way, Your Honor. I think if the Court is inclined to agree with the government that this is not a fundamental error, then I think Wheeler – the cert proceedings in Wheeler go by the wayside. Because if the Supreme Court were to grant cert and they agree with Wheeler, then we're just back to where we started. But if they agree with the government, then it's just an alternative basis for affirming the judgment. Now, if the Court is inclined to grant relief to Mr. Lester, then I think you have to make some decisions. One option would be to abate the appeal. And I will say that we will certainly keep the Court apprised of any pending developments in Wheeler by letter and will certainly notify counsel. But one option is you could abate the appeal. It is – there is a reasonable possibility that if the Supreme Court will take this up by January and if they grant review, that you would have a decision by June. Again, if that schedule changes, we'll notify the Court. Another option, Your Honor, is you could just go ahead and grant relief to Mr. Lester. We would certainly oppose any request for immediate release. I think that that needs to be done in an orderly fashion. I think the government would certainly like to be heard if the Court is going to grant relief. And I think it's relatively extraordinary, I think, for a court of appeals to order immediate release and not direct the district court to undertake that review. But I think you could certainly grant relief. Again, though, because of the pendency of the proceedings in Wheeler, if this court were to grant relief, I think the government would file a petition, most likely either in this Court or perhaps in the Supreme Court, saying let's just wait and see what happens with Wheeler before we move forward. So if you agree with us that it's not fundamental, I think you can just go ahead and decide the case. If you believe that it is fundamental, then I think you have to make some decisions about what's the most efficient and orderly way of disposing of the case at this time. Sorry. I need my glasses here. So there's been a lot said by my opponent, rightly so, about the impact of Booker on this case. And I want to just take a minute to address that. We respectfully have a different reading. Because of what I was saying before about departure powers, yes, departures were first enacted. To the extent the suggestion is, as I understand my opponent this morning, that the top of a mandatory guidelines range was really equivalent to a statutory maximum, I think the existence of the departure authority rebuts that suggestion. But let me say, you don't have to take my word for it. You can take the Supreme Court's own word for it. Three years after Booker, in a case called United States v. Rodriguez, not Rodriguez, but Rodriguez with a Q, which is cited in our papers, the court unambiguously said, and I'm quoting here, that the top end of a guidelines range, even when the guidelines were mandatory, does not set a maximum punishment provided by law because courts always had the authority to depart. And this goes to what I was saying before in response to Judge Keenan and in response to my hypothetical. Forty years is an inviolable maximum. The top of the guidelines range was not. Courts could depart. Yes, it was constrained. Yes, it was restricted. But that theoretical, that availability of that departure authority is a significant factor that changes the calculus in terms of how you look at the guidelines. It changes the calculus from a separation of power standpoint. It changes the calculus from the standpoint of whether or not this can or should be deemed fundamental. I would also say that to the extent there's a suggestion that the top of a mandatory guidelines range was a legislative maximum, that would also conflict, I think, in respects with what the Supreme Court said in Mistretta. Okay? In Mistretta, when the Court was talking about sentencing, they said very clearly that Congress delegated to the Sentencing Commission the authority to promulgate guidelines, but it didn't delegate to the Commission the authority to set legislatively binding minimum and maximum sentences. And so to read the top of a mandatory guidelines range as binding, I think, would create tension with Mistretta. I don't think that's the appropriate reading. Yes, the departures were more restricted, but there is a qualitative difference as Foote recognized. And I think the best way for the Court to harmonize Foote with Wheeler is to say that the guidelines fall on one side of the ledger and statutory errors fall on the other side of the ledger because of the separation of powers concerns, because the Court could reimpose the same sentence. I think that those principles, I think, suggest that this case should be viewed more like Foote rather than Wheeler. Well, couldn't the Court impose the same sentence in Wheeler or not? Yes, but again, it was the question. In Wheeler, the Court said that the fact that the Court could reimpose the same sentence isn't determinative of whether or not it's fundamental, but in Foote, the Court said it's a relevant consideration. So we're not arguing that reimposition is determinative, but we are saying it's one of the factors that the Court can take into account. The other point that Wheeler, I'm sorry, that Foote made that I'd just like to make is that there is one of the problems that Foote identified was a line-drawing problem, because as this Court is well aware, it has precedent back when we didn't call the guidelines mandatory, but they were mandatory. It has precedent saying that ordinary misapplications of the guidelines are not redressable in a collateral attack, and I'm referring to the Preejant decision and the Mikulahunas decision. And what the Court said in Foote is, given those precedents, how do we distinguish what's an ordinary misapplication of the guidelines from something that's extraordinary, which I assume would be fundamental? And Foote refused to undertake that line-drawing task because it said it's pointless, that no matter what standard or what line you try to draw, it's either going to be over-inclusive or under-inclusive. So, for example, what the defense is arguing, I think, in this case, is that the without the application of that guideline, Mr. Lester's guidelines range would have been about half as much. Okay, but is half as much a necessary condition? Is it a sufficient condition? We just don't know. It's kind of a know-it-when-you-see-it approach to determining what's fundamental, and I don't think that's a principled way to approach the issue. And Foote rejected that in light of this Court's precedents. Ordinary misapplications don't qualify. It didn't want to get into a process of trying to draw what I think the Court viewed as somewhat arbitrary lines. I think you have the same problem here. If you're going to say that the career offender guideline is fundamental, what about other guidelines? There are guidelines that call for 16-level enhancements. They can have an even more profound impact on a defendant's guidelines range than simply the career offender. It's not true that every career offender enhancement has this profound effect, and we don't know how profound it has to be to qualify as fundamental. There's been no test that's been proposed by my opponent or by any of the other courts of appeals. It's just a very subjective, visceral approach, which is not really consistent with how we normally do things. We articulate a standard, and then we try to decide if the standard is met. We don't use the facts of the case to determine what the standard should be or is. And so, again, I think the last point maybe that I'd like to make in closing is I know my opponent emphasized that in Wheeler the Court talked about a properly calculated sentencing range as being critical to the sentencing process. Again, at the risk of repeating myself, and I apologize, I think it's critical that you read that language in the context in which the Court used it. It was talking about a properly calculated statutory sentencing range. Wheeler was all about statutes. It wasn't talking about calculating the guidelines range, because once you start believing that this is about the guidelines range, then you start looking at, you know, there's a whole bunch of Supreme Court cases about what happens if you miscalculate the guidelines range. It's not a guidelines case. Wheeler was a statutory case. And, again, it's the separation of powers concerns that animated the reason for why you need to have a properly calculated statutory range, because we don't want courts misapplying the will of Congress. But when a court misapplies the guidelines, those concerns simply aren't present. Unless the Court has further questions, we would simply urge the Court to conclude that this is not a fundamental error and affirm the district court's judgment. Thank you very much, Your Honors. Mr. Garcia? Thank you, Your Honor. I do think that our position here flows naturally from Wheeler. And I do want to say a few words about our rule and the separation of powers arguments the government is making. So our rule is the same rule set out in foot. It's the government's same rule. A sentence is fundamentally defective. If it exceeds the maximum lawful term under the relevant statutes. And in the government's entire argument, they are simply ignoring the second relevant statute. Section 3553B1 said courts shall impose a sentence within the guidelines range. As Booker explains, that meant that the guideline range had the same constraining effect as a statute. What is the limiting principle? Mr. Rockger alluded to the fact that at least if we base it on the statutes of conviction, we have some clarity. What would your limiting principle be with respect to the availability of savings relief under the savings clause whenever a court applied a guideline range that was subsequently lowered? Yes, the limiting principle is whether the sentence exceeds the maximum lawful term authorized under the relevant statute. So today, that is only sentences above the statute. But that applies to all sentences. I'm not sure how I see how that works. Correct, Your Honor. So today, the government concedes that under the Armed Career Criminal Act, if you have an improper Armed Career Criminal Act enhancement that takes you from a 10-year maximum sentence to above that, that that is fundamental. That's not much of a limitation, is it? Your Honor, every case that the savings. The savings clause was never meant to be coextensive. Absolutely, Your Honor. There are so many sentencing errors that will not be available for relief under the savings clause. These eight circuits sunder even with mandatory guideline errors. You don't get relief every time. It's only if your sentence exceeds the maximum lawful term. But it cuts out any of the prerequisites that would ordinarily apply. The appellant doesn't make the statute of limitations, doesn't meet the statute of limitations problem. There seems to be no clear limiting principle. And for me, from my perspective, and I'm not, I'm actually not, it sounds like I'm arguing with you, but I'm not. I'm trying to work it out in my head. At least the decision of what's statutory and what's guidelines is clean. I'm not sensing any cleanliness or certitude about your proposed reading. Yes, Your Honor. Or fundamental. And the, so I do think Wheeler gets us almost all the way there. And then I'm more than happy to accept your distinction between statutes and guidelines. And the fact is that before Booker, the guidelines were made binding by a statute. That is our dividing principle. So after Booker. So just the mandatory guide, you would be comfortable with a ruling that says only those errors committed under a pre-Booker sentencing regime. Yes, and under the pre-Booker sentencing regime, that resulted in a sentence above the proper maximum range. So that's even more limited, Your Honor. And in terms of the separation of powers argument, if the court wants to think about it in this way, I respectfully disagree with the government. If the court in Mr. Lester's case had understood that the proper mandatory range was 151 months and understood, as every judge did before Booker, that Section 3553, a statute commanded him to impose at most that sentence. And we were all wrong. And had said, in my discretion, in my discretion I'll impose 40 years. The government's position is that is not a fundamental defect. And that simply cannot be right. That judge would have violated federal law and the separation of powers by ignoring a congressional mandate, the mandate in 3553 to adhere to the guidelines. And the government's only response to that is departures. And as the Seventh Circuit has put it, statutes have exceptions too. I'll go back to the Armed Career Criminal Act. There's normally a 10-year maximum. If you're an armed career criminal, the maximum is life. The government apparently thinks that that means the authorized sentence for anyone who's a felon in possession is life. No. If specific circumstances are present, if you're a career offender, or if there's a departure, if there's a basis for a departure, then you're exposed to a higher sentencing range. But if you are not, the court is bound by the guidelines range. That's literally the holding of Booker. That's on page 234. And the final point, if I may, is just to address the government's points about Foote, which is I do not think there's any ambiguity. If you'll indulge me, I'll just read what Foote says. Briefly, if you're out of time. So it says the same test we are saying, a defect is fundamental if it is in excess of the maximum authorized by law. However, Booker stripped the guidelines of legal force and made them advisory. Because of this lack of legal force, we would be remiss to place an erroneous guidelines classification in the same category as violation of a statute. Before Booker, they were binding. That's our simple position. If the question is whether this is more similar to Wheeler or Foote, both Foote and Wheeler tell us the answer. Thank you very much. Thank you, Mr. Garcia. Did you have a question? Thank you very much. We will come down and greet counsel and then proceed directly to the next case.
judges: Allyson K. Duncan, Barbara Milano Keenan, Albert Diaz